[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from an assessment of damages made by the defendant for the taking of an easement to slope and certain other rights concerning the plaintiff's property as found necessary by the defendant for the layout, alteration, extension, widening, change of grade or improvements of the State Highways known as Route 3 and Interstate Route 91. The taking is described in the complaint and is shown on a map entitled: "TOWN OF WETHERSFIELD MAP SHOWING EASEMENT ACQUIRED FROM BEATRICE MOORS BY THE STATE OF CONNECTICUT MODERNIZATION OF RTE. 3 I-91 INTERCHANGE SCALE 1" = 40' MAY 1989 REVISED TO MARCH 9, 1992 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS" A copy of the map was introduced into evidence as Exhibit B. CT Page 94
The parties agreed that the date of the taking was July 11, 1992 and that damages assessed by the defendant at $1,400 have been deposited with the clerk of the court.
The subject property is in the Town of Wethersfield, which is in the north central part of Connecticut. Wethersfield lies on the west bank of the Connecticut River just to the south of Hartford and is part of the Capitol Planning Region. The interstate highway system is conveniently reached, and major north and south thoroughfares run through the town. Wethersfield is primarily residential in character, but also contains agricultural and commercial properties.
The subject property is in Flood Plain in the "Old Wethersfield" section of the town. It lies on the east side of Elm Street about 30 feet south of Maple Street, which is Route 3. It is bounded north and east by land of the State of Connecticut and to the south by a "paper" street known as Morris Street. Before the taking it was substantially level with the street grade of Elm Street. There is a one and one-half story house on the property to the north of which there is a driveway. Utilities servicing the property include water, telephone and electric service. There are shrubs and trees on the property and it has its own septic system.
The taking consisted of an easement to slope for the support of the highway within an area of 0.028 of an acre. This easement runs along the Elm Street boundary of the subject property. The slope easement is required because the elevation of both Elm Street and Maple Street, Route 3, is to be raised. The defendant also acquired a right to construct driveways and to reset timber wall and slate walk within an area of 0.011 of an acre, more or less, these rights to terminate upon completion of the work.
After taking, the subject property will no longer be substantially level with the street grade of Elm Street. The final plans provide for raising Elm Street four feet, more or less at the northerly end of the subject property and two and one-half feet, more or less, at its southerly end. Thus the front yard will no longer be substantially level but will slope down from Elm Street. Because Maple Street is also raised, the subject property will exist in a shallow CT Page 95 depression after the taking. Also, several shrubs and a tree will be removed. After construction, although the travelled portion of Maple Street will remain as located before, the southerly shoulder will be ten feet to fifteen feet closer to the subject property.
The plaintiff testified that when it rained before the taking, rainwater ran off her property along the driveway and Morris Street to a catch basin on Elm Street. She thought that after Elm Street was raised, water would run back to her cellar. She also thought that the slope would cause other difficulties for her and that the market value of her property will be reduced in consequence.
Nadir Donat, a qualified engineer and land surveyor, was called as an expert witness by the plaintiff. He opined that the elevation of Elm Street and the slope easement will cause drainage onto the subject property. It was his opinion that construction of yard drains and piping to the Elm Street catch basin would solve a potential drainage problem, and he estimated the cost of construction at $3,000. Donat also opined that the northern driveway is too close to the intersection of Elm Street and Maple Street. It was his opinion that backing out of the driveway was hazardous before the take and would become more so after the taking because of the extension of the shoulder and the upward slope of the driveway. He opined that it would be preferable to use Morris Street as a driveway. He recommended construction of a parking area off Morris Street and a new walkway and steps to the house. He estimated the cost at about $5000. It was his opinion that from an engineering point of view, this would improve the property.
Finally, the plaintiff called Eric Richard Sjostrom, a qualified real estate appraiser, as an expert witness. He opined that the highest and best use of the subject property was continued use as a single family dwelling. Using comparable sales, he estimated that the fair market value of the subject property before the taking was $120,000. Sjostrom opined that the elevation of the highways and the new I-91 ramp, together with the loss of trees on state property, resulted in an increase in visibility and noise and loss of privacy to the subject property. He opined that there would be a substantial increase in drainage water at the subject and surrounding properties and that the new pitch of the driveway CT Page 96 will direct water from the street towards the dwelling. He estimated that the fair market value after the taking was $85,000 and concluded that there were severance damages of $35,000. He estimated damages for the slope easement at $1,214 and damages for the loss of shrubs and a tree at $700. He rounded off the total of $1,914 at $1,900 and estimated total damages for the taking at $36,900. To this Sjostrom added $8,500 to cover the costs estimated by Donat to arrive at a total of $45,400.
The defendant called Brian J. Natwick, the project engineer, as a witness. He testified that the defendant will install curbing along the easterly line of Elm Street. The curbing will run across the driveway but along the driveway it will be only one and one-half inches in height. In addition, the apron of the driveway will slope up from Elm Street. He opined that these provisions would take care of water run-off from Elm Street. It was his opinion that there might be some ponding on the north side of the subject property, but that it would not require special drainage. A swale will take water run-off from Maple Street. The defendant will pave the driveway unless the plaintiff chooses not to have it paved. The defendant will also pave Morris Street for some distance east from Elm Street.
Bruce Cameron Cowdry, a qualified real estate appraiser, was called as an expert witness by the defendant. Cowdry opined that the highest and best use of the subject property was continuation of the present residential use. Using comparable sales, he estimated that the fair market value of the property before the taking was $110,860. It was his opinion that the value before the taking was affected by the proximity of I-91 and Maple Street, Route 3, and by the fact that it was within a flood plain zone. The taking will remove several shrubs and a tree, and Cowdry estimated the contributory value of these items at $860. He assumed that after the taking there would be no water run-off onto the property from the highway, but he opined that there would be a drainage problem because of water accumulation on the property. Because any drainage problem which results can be alleviated, Cowdry estimated no severance damages. He estimated the fair market value of the subject property after the taking at $109,000. He concluded that damages for the taking were $1,860. CT Page 97
The duty of a referee in condemnation matters is to make an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. His determination of value depends upon his considered judgment, taking into consideration the divergent opinions of the witnesses and the claims of the parties.
The highest and best use of the subject property is a continuation of its present residential use. I have concluded that the slope at the entrance to the northern driveway will not make it more dangerous to use, although it may be more difficult to drive out of it when there is snow on the ground. The extension of the shoulder of I-91 does not increase whatever detrimental effect the proximity of the highway had before the take. I have concluded that the elevation of Elm Street will cause some accumulation of water on the subject property which will not run off to Elm Street. This problem can be alleviated by construction of a drainage system.
Having seen the subject property, and having given full consideration to all of the testimony and all of the evidence offered by the parties, and relying upon my own knowledge of the elements constituting value, I have concluded that the damages sustained by the plaintiff are $7,575. Judgment may enter for the plaintiff for the further sum of $6,175 in addition to the sum of $1,400 which was deposited with the clerk of the court by the defendant, with interest on such further sum from the date of taking to the date of payment, together with an allowance toward the appraisal fee of $2,500.
George D. Stoughton State Trial Referee